Michael P. McCloskey, Esq. (SBN 106051)
David J. Aveni, Esq. (SBN 251197)
**WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 321-6200
Facsimile: (619) 321-6201
E-mail: michael.mccloskey@wilsonelser.com
        david.aveni@wilsonelser.com

Attorneys for Defendant
LANTSON E. ELDRED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>PETER H. POCKLINGTON, LANTSON E. ELDRED, TERRENCE J. WALTON, YOLANDA C. VELAZQUEZ a/k/a LANA VELAZQUEZ a/k/a LANA PULEO, VANESSA PULEO, ROBERT A. VANETTEN, NOVA OCULUS PARTNERS, LLC, f/k/a THE EYE MACHINE, LLC, and AMC HOLDINGS, LLC,<br><br>Defendants.<br><br>EVA S. POCKLINGTON, DTR HOLDINGS, LLC, COBRA CHEMICAL, LLC, and GOLD STAR RESOURCES, LLC,<br><br>Relief Defendants. | **CASE NO. 5:18-cv-00701-JGB-SP**<br><br>**DEFENDANT ELDRED'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>District Judge:   Hon. Jesus G. Bernal<br>Magistrate Judge: Hon. Sheri Pym<br><br>Complaint Filed: April 5, 2018<br>Trial Date:      Not Set<br><br>Hearing Date: Sept. 10, 2018<br>Hearing Time: 9:00 a.m. |

Defendant Lantson E. Eldred ("Eldred") hereby joins in, and incorporates by reference, the reply in support of the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) concurrently filed by defendants Peter Pocklington, Terrence Walton, Robert Vanetten, Nova Oculus Partners, LLC f/k/a The Eye Machine, LLC, AMC Holdings, LLC, and Relief Defendants Eva Pocklington, DTR Holdings, Cobra Chemical, LLC, and Gold Star Resources, LLC.

Eldred further replies in support of his motion to dismiss as follows:

## I. DISCUSSION

### A. Eldred Could Not Be The "Maker" Of Any Alleged Misrepresentation Because The Complaint Alleges Eldred Was Only A "Figurehead"

The SEC does not dispute that according to its own complaint, Eldred was just a "visual front" for the Eye Machine, and that it was Pocklington who was in actual control of the company. The SEC argues Eldred nonetheless can still be held liable as the "maker" of the alleged misstatements in the PPM because the SEC alleges Eldred:

- "helped draft the PPMs,"
- "[provided] factual information contained in the PPMs," and
- "[reviewed] the PPMs before they were provided to investors."

(SEC Opposition at 23 (quoting SEC Complaint ¶ 47).)[1] In other words, the SEC argues someone who helped create a written statement or who supplied information for it can be held liable on that basis as the statement's "maker."

/ / /

/ / /

/ / /

---

[1] The SEC does not claim the alleged misrepresentations in the PPMs were made in Eldred's name or that Eldred signed the PPMs containing them. The SEC simply claims that by helping draft the PPMs, and by supplying information for them, Eldred was the "maker" of the statements therein.

REPLY IN SUPPORT OF MOTION TO DISMISS                                           Case No. 5:18-cv-00701-JGB-SP
1920540v.2

That view is precisely what was rejected by the Supreme Court in *Janus Capital Group., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Further, that view has been roundly rebuffed as inconsistent with *Janus* ever since. A court within this district put it plainly: "Courts since *Janus* have applied [*Janus*] to disallow Rule 10b-5(b) claims against defendants who <u>merely requested, influenced, helped create, or supplied information for</u> the relevant false or misleading statements." *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *6 (C.D. Cal. July 13, 2015) (emphasis added); *see In Re Solarcity Corp. Sec. Litig.*, 274 F.Supp.3d 972, 1007 (N.D. Cal. 2017) ("Multiple district courts in this circuit have held that merely acting as the 'source' of allegedly false or misleading information does not mean that such a person had 'ultimate authority' over the statements that were then communicated to the public.")

In *Janus*, the Supreme Court considered whether a mutual fund investment adviser could be held liable for statements made in prospectuses issued by the mutual fund it advised. The investment advisor provided management services to the mutual fund. The Court concluded the investment advisor could not be liable, even though it was heavily involved in preparing the challenged prospectuses. *Janus*, 564 U.S. at 147-48. The Court held the "maker" of a statement is the person or entity with "ultimate authority" over it. The Court reasoned that without control, "a person or entity can merely suggest what to say, not 'make' a statement in its own right." *Janus*, 564 U.S. at 142.

Turning to the facts of that case, the Supreme Court found the prospectuses were issued in the name of the mutual fund, not in the name of the advisor, and thus it was the fund itself that "made" the statements. Further, although the investment advisor provided substantial assistance in drafting the challenged statements, the Court found the mutual fund ultimately had control over whether to include the statements in the prospectuses. The Court analogized the investment advisor to a speechwriter – although a speechwriter drafts the speech, and thus crafts the words

3

that are spoken, the ultimate control over the content belongs to the one who delivers the speech. In the same way, the Court concluded the investment advisor did not have ultimate control over the language in the prospectuses even though it drafted language alleged to be misleading. *Id.* at 142-43, 146-48.

Consequently, under *Janus*, what matters is whether one has "ultimate authority" over the statement – *not* whether that person helped draft, provide content for, or review the statement. Here, the SEC's complaint alleges it was Pocklington who had such authority and control. Further, the complaint specifically and emphatically alleges Eldred did *not* have such authority – in fact it is a central premise of the SEC's entire case that Eldred was nothing more than a "figurehead" and a "visual front" for the Eye Machine, with Pocklington in actual and ultimate control of the company behind the scenes. (Complaint ¶¶ 5, 39-40, 54, 55, 57.)

The SEC argues its complaint does not allege Pocklington had *exclusive* control over the Eye Machine, and thus the SEC suggests its complaint does not foreclose the possibility Eldred shared ultimate control with Pocklington, such that both individuals could be liable. (SEC Opposition at 23.) But again, that argument is inconsistent with the SEC's allegation Eldred was a "figurehead" or "visual front" for the company. Merriam-Webster's Dictionary defines "figurehead" as "a head or chief *in name only*." (*Merriam Webster's Collegiate Dictionary* 435 (10th Ed. 1998) (emphasis added).) The term "visual front" is synonymous. If Eldred was a "figurehead" or "visual front," as the SEC alleges, then by definition, his authority was in name only, and he lacked the ultimate control necessary to be the "maker" of the statements at issue.

The SEC cannot have it both ways. Having alleged Eldred was just a visual front and that Pocklington was the one who was in actual control behind the scenes, the SEC is stuck with the consequence of that allegation under *Janus* – that Eldred could not be liable as the "maker" of the alleged misrepresentations.

The SEC also argues *Janus* "'has no bearing on how corporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability.'" (SEC Opposition at 23 (quoting *City of Pontiac General Employees' Retirement Sys. v. Lockheed Martin Corp.*, 875 F.Supp.2d 359, 374 (S.D.N.Y. 2012).) While multiple officers within the same corporation could have ultimate authority sufficient for each of them to be liable under *Janus*, that cannot be the case here. That is because, as detailed above, the SEC's complaint specifically alleges Eldred *lacked* such authority.

It also is worth noting that the case the SEC quotes for this proposition is a Southern District of New York case that relates to the so-called "group pleading doctrine," by which some courts have allowed private plaintiffs to satisfy the particularity requirement of Rule 9(b). The group pleading doctrine allows a presumption at the pleading stage that certain written corporate statements were the result of collective action by the corporation's officers, thus avoiding the need to allege the involvement of each individual officer with particularity. That doctrine has been rejected by the majority of courts, including throughout the Ninth Circuit. *See, e.g, In re New Century*, 588 F. Supp. 2d 1206, 1223-24 (C.D. Cal. 2008); *In re Hansen Natural Corp.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007). That doctrine has no relevance here, nor does the SEC seem to argue to the contrary. The SEC's reliance on that case is misplaced.

## II. CONCLUSION

Eldred respectfully requests the SEC's Complaint be dismissed for the reasons set forth in the motion to dismiss filed by defendants Peter Pocklington, Terrence Walton, Robert Vanetten, Nova Oculus Partners, LLC f/k/a The Eye Machine, LLC, AMC Holdings, LLC, and Relief Defendants Eva Pocklington, DTR Holdings, Cobra Chemical, LLC, and Gold Star Resources, LLC. Further, the SEC's claims against Eldred under Section 10(b) and Rule 10b-5(b) and Section 17(a)(2) should be dismissed because under the SEC's Complaint, Eldred could not be the "maker" of

1 | the alleged misrepresentations.  Finally, because the SEC fails to state a claim for
2 | primary violations of Section 10(b) or Section 17(a), its claims for aiding and
3 | abetting those violations fail as well.

Dated:  August 27, 2018

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/ Michael P. McCloskey*
    Michael P. McCloskey, Esq.
    David J. Aveni, Esq.
    Attorneys for Defendant
    LANTSON E. ELDRED