Becky S. James (SBN 151419)
Jaya C. Gupta (SBN 312138)
Rachael A. Robinson (SBN 313991)
JAMES & ASSOCIATES
23564 Calabasas Road, Suite #201
Calabasas, CA 91302
Telephone: (310) 492-5704
Facsimile: (888) 711-7103

Attorneys for Defendants Peter H.
Pocklington, Terrence J. Walton, Robert
Vanetten, Nova Oculus Partners, LLC
f/k/a The Eye Machine, LLC, and AMC
Holdings LLC, and Relief Defendants Eva
S. Pocklington, DTR Holdings, LLC,
Cobra Chemical, LLC and Gold Star
Resources, LLC

# IN THE UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>PETER H. POCKLINGTON, LANTSON ELDRED, TERRENCE J. WALTON, YOLANDA C. VELAZQUEZ a/k/a LANA VELAZQUEZ a/k/a LANA PULEO, VANESSA PULEO, ROBERT VANETTEN, NOVA OCULUS PARTNERS, LLC, f/k/a THE EYE MACHINE, LLC, and AMC HOLDINGS, LLC,<br><br>    Defendants,<br><br>EVA S. POCKLINGTON, DTR HOLDINGS, LLC, COBRA CHEMICAL, LLC, and GOLD STAR RESOURCES, LLC.<br><br>    Relief Defendants. | Case No. 5:18-cv-00701<br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)<br><br>Date:     September 10, 2018<br>Time:     9:00 a.m.<br>Court:    Courtroom 1<br>          Honorable Jesus G. Bernal |

# **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................... 1

I.   The SEC Has Failed to Allege a Scheme to Defraud or Deceptive or
     Manipulative Acts in Furtherance of the Scheme to Defraud and Its First and
     Second Claims Must Be Dismissed. ............................................................... 1

II.  The SEC Has Failed to State a Claim Under Rule 10b-5(b) as a Matter of
     Law. ................................................................................................................ 6

     A.  The SEC Has Failed to State a Claim Under Rule 10b-5(b) as to Allegedly
         Misleading Statements Regarding Offering Costs. .................................... 6

     B.  The SEC's Allegations Regarding Misappropriation Are Implausible and Its
         Rule 10b-5(b) Misrepresentation Claim Predicated on Such
         Misappropriation Should Be Dismissed. .................................................. 12

     C.  The SEC Has Failed to Plead Actionable Misstatements and Omissions
         Regarding Pocklington's Alleged Role in Eye Machine .......................... 16

III. The SEC Has Failed to Plausibly Allege That Defendant Pocklington Was the
     "Maker" of Any of the Alleged Misrepresentations. .................................... 17

IV.  The SEC Has Failed to Allege Adequate Facts to Establish that Walton Acted
     Negligently as a Certified Public Accountant and Therefore Its Section
     17(a)(3) Claim Must Be Dismissed .............................................................. 19

CONCLUSION ................................................................................................. 22

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Abbate v. Wells Fargo Bank, N.A.*,
   No. 10-cv-6561, 2011 WL 9698215 (C.D. Cal. Nov. 17, 2011) ...........................4

4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................passim

5

6

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................................11, 16

7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................15

8

9

*Burnett v. Rowzee*,
   561 F.Supp.2d 1120 (C.D. Cal. 2008) ................................................................2

10

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ..............................................................................................1

11

12

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ...............................................................................2

13

*Desai v. Deutsche Bank Securities Ltd.*,
   573 F.3d 931 (9th Cir. 2009)................................................................................5

14

15

*Durning v. First Boston Corp.*,
   815 F.2d 1265 (9th Cir. 1987).............................................................................13

16

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995)...............................................................................10

17

18

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)...............................................................................16

19

*In re Coinstar Inc. Sec. Litig.*,
   No. 11-cv-0133, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011)..........................4

20

21

*In re CytRx Corp. Sec. Litig.*,
   No. 14-cv-1956, 2015 WL 5031232 (C.D. Cal. July 13, 2015)...........................19

22

*In re New Century*,
   588 F.Supp.2d 1206 (C.D. Cal. 2008) ................................................................9

23

24

*In re Worlds of Wonder Securities Litig.*,
   35 F.3d 1407 (9th Cir. 1994)......................................................................passim

25

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) .............................................................................8

26

27

*Santa Fe Industries v. Green*,
   430 U.S. 462 (1977) .........................................................................................1, 2

28

*SEC v. ABS Manager, LLC*,
    No. 13-cv-0319, 2014 WL 2605476 (S.D. Cal. June 11, 2014) ............................. 9

*SEC v. Aequitas Management LLC*,
    No. 16-cv-0438, 2017 WL 1206691 (D. Or. Jan. 9, 2017) ..................................... 5

*SEC v. Arthur Young & Co.*,
    590 F.2d 785 (9th Cir. 1979) ............................................................................. 21

*SEC v. Blavin*,
    760 F.2d 706 (6th Cir. 1985) ............................................................................... 9

*SEC v. Daifotis*,
    No. 11-cv-1037, 2011 WL 2183314 (N.D. Cal. June 6, 2011) ...................... 2, 3, 4

*SEC v. Dain Rauscher, Inc.*,
    254 F.3d 852 (9th Cir. 2001) ................................................................. 12, 20, 21

*SEC v. Hughes Capital Corp.*,
    124 F.3d 449 (3d Cir. 1997) .......................................................................... 19, 20

*SEC v. Husain*,
    No. 16-cv-3250, 2017 WL 810269 (C.D. Cal. Mar. 1, 2017) ................................ 2

*SEC v. Lucent Techs., Inc.*,
    610 F.Supp.2d 342 (D.N.J. 2009) ..................................................................... 3, 4

*SEC v. Mercury Interactive, LLC*,
    No. 07-cv-2822, 2011 WL 5871020 (N.D. Cal. Nov. 22, 2011) .................. 2, 3, 18

*SEC v. Perry*,
    No. 11-cv-1309, 2012 WL 1959566 (C.D. Cal. May 31, 2012) ............................ 9

*SEC v. Research Automation Corp.*,
    585 F.2d 31 (2d Cir. 1978) ............................................................................ 15, 16

*SEC v. Wilde*,
    No. 11-cv-0315, 2012 WL 6621747 (C.D. Cal. Dec. 17, 2012) ............................ 6

*SEC v. Zandford*,
    535 U.S. 813 (2002) ............................................................................................. 5

*SEC v. Zouvas*,
    No. 16-cv-0998, 2016 WL 6834028 (S.D. Cal., Nov. 21, 2016) ....................... 2, 3

*Simpson v. AOL Time Warner Inc.*,
    452 F.3d 1040 (9th Cir. 2006) ......................................................................... 2, 3

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
    552 U.S. 148 (2008) ............................................................................................. 2

*Swack v. Credit Suisse First Boston*,
    383 F.Supp.2d 223 (D. Mass. 2004) ..................................................................... 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007)..................................................................13

*Vaughn v. Teledyne, Inc.,*
  628 F.2d 1214 (9th Cir. 1980).................................................................1

*Virginia Bankshares, Inc. v. Sandberg,*
  501 U.S. 1083 (1991) ........................................................................10, 11

*WPP Luxembourg Gamma Three Sarl v. Spot Runner Inc.,*
  655 F.3d 1039 (9th Cir. 2011)..............................................................1, 5

DEFENDANTS' REPLY ISO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants Peter H. Pocklington, Terrence J. Walton, Robert Vanetten, Nova Oculus Partners, LLC f/k/a The Eye Machine, LLC, and AMC Holdings, LLC, and Relief Defendants Eva S. Pocklington, DTR Holdings, LLC, Cobra Chemical, LLC, and Gold Star Resources, LLC (collectively, the "Defendants"), respectfully submit this Reply in support of their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **ARGUMENT**

### I. **The SEC Has Failed to Allege a Scheme to Defraud or Deceptive or Manipulative Acts in Furtherance of the Scheme to Defraud and Its First and Second Claims Must Be Dismissed.**

Despite the SEC's best attempts to convince this Court otherwise, the SEC has not alleged deceptive conduct comprising a scheme separate and apart from the alleged misrepresentations and omissions claimed as part of its Rule 10b-5(b) and Section 17(a)(2) claims.  The SEC, therefore, cannot maintain its Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) claims (First and Second Claims).  *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057-58 (9th Cir. 2011).  Moreover, the acts that the SEC has identified and contends are "deceptive acts beyond what was written in the PPMs[,]" demonstrate they are not, in fact, deceptive, and therefore cannot support liability under either Rule 10b-5(a) and (c) or Section 17(a)(1) and (3).

Section 10(b) and Rule 10b-5 "prohibit[] only the making of a material misstatement (or omission) or the commission of a manipulative act."  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) (later stating that "[w]e cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute."); *Santa Fe Industries v. Green*, 430 U.S. 462, 475 (1977).  "A 10b-5 action can be maintained only if the alleged conduct is 'manipulative or deceptive' within the meaning of the statute."  *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214 (9th Cir. 1980);

*Santa Fe*, 430 U.S. at 475 ("[t]he language of §10(b) gives no indication that Congress meant to prohibit any conduct *not involving* manipulation or deception.").

Scheme liability under Rule 10b-5(a) and (c) exists when "a defendant's conduct or role in an illegitimate transaction has the principal purpose and effect of creating a false appearance of fact in furtherance of a scheme to defraud." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008); *Burnett v. Rowzee*, 561 F.Supp.2d 1120, 1125 (C.D. Cal. 2008). "[A] scheme in the most fundamental sense [involves] a plan with defined, repeated steps…executed for a specific purpose[.]" *SEC v. Husain*, No. 16-cv-3250, 2017 WL 810269, *9 (C.D. Cal. Mar. 1, 2017); *SEC v. Zouvas*, No. 16-cv-0998, 2016 WL 6834028, *6 (S.D. Cal., Nov. 21, 2016) (finding scheme liability where SEC "competently pled the existence of a larger scheme that went beyond mere misrepresentations or omissions"); *SEC v. Mercury Interactive, LLC*, No. 07-cv-2822, 2011 WL 5871020, *2 (N.D. Cal. Nov. 22, 2011) (noting that "[w]hile the question is a close one," SEC adequately alleged scheme liability where widescale backdating scheme "encompasse[d] enough conduct beyond the concealment of the compensation expenses to state a viable claim of scheme liability").

To be liable for participating in a scheme, a defendant "must satisfy each of the elements or preconditions for liability[,]" meaning that "each defendant [must have] committed a manipulative or deceptive act in furtherance of the scheme." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008); *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997). "Conduct that is *consistent with the defendants' normal course of business* would not typically be considered to have the purpose and effect of creating a misrepresentation." *Simpson*, 452 F.3d at 1050 (emphasis supplied); *SEC v. Daifotis*, No. 11-cv-1037, 2011 WL 2183314, *9 (N.D. Cal. June 6, 2011); *accord SEC v. Lucent Techs., Inc.*, 610 F.Supp.2d 342,

360 (D.N.J. 2009).  Instead, the conduct at issue "must involve 'sham' or 'inherently deceptive' transactions to be an actionable basis for scheme liability.  *Daifotis*, 2011 WL 2183314 at *9; *Lucent*, 610 F.Supp.2d at 360.

Here, the SEC claims it has alleged several supposedly deceptive acts beyond what was written in the PPMs that it claims were acts in furtherance of a scheme to defraud. (Opp. at 11; Compl. at ¶¶ 67-72.)  In fact, however, the "acts" the SEC identifies are fundamentally no different than the acts that form the basis of its misrepresentation and omission claim under Rule 10b-5(b).  Far from being "a plan with defined, repeated steps…executed for a specific purpose[,]" the alleged acts are simply reiterations of the SEC's bases for its misrepresentation claims: alleged concealment of Pocklington's role and misappropriation of investor funds.  *Zouvas*, 2016 WL 6834028 at *6; *see also Mercury Interactive*, 2011 WL 5871020 at *2 (finding scheme liability separate from misrepresentation liability because the SEC had alleged that "Defendants entered into a *comprehensive* scheme under which in-the-money stock options would be granted on a broad scale…Defendants allegedly backdated *forty-five* different stock grants to themselves, other executives, and employees over more than five years… to a carefully selected date corresponding to a relative low point of the company's stock…so as to maximize the benefit to the grantees…" (emphasis supplied)); *Swack v. Credit Suisse First Boston*, 383 F.Supp.2d 223, 237 (D. Mass. 2004) (finding allegations sufficient where defendant, in addition to issuing misleading investor reports, worked *extensively* to boost the company's market price artificially through activities that were not omissions).

Moreover, even assuming *arguendo*, that these acts could, together, constitute a scheme, the SEC has failed to show that each act was "inherently deceptive" as is required under Rule 10b-5(a) and (c).  To begin, there is nothing "inherently deceptive" about the creation of AMC Holdings as this is conduct that is consistent with the normal course of business.  *Simpson*, 452 F.3d at 1050; *Daifotis*, 2011 WL

1   2183314 at *9; *accord Lucent*, 610 F.Supp.2d at 360.

2        The second through fifth categories of supposedly deceptive acts identified by

3   the SEC are all mere reiterations of their misrepresentation claim involving the

4   supposed concealment of Pocklington's role.  (Compl. at ¶¶ 68-72.)  The SEC points

5   out that the Complaint alleges that "Pocklington concealed his full identity during

6   conference calls *by allowing himself to be introduced* simply as 'Peter, one of our

7   significant investors." (Compl. at ¶ 68 (emphasis supplied)).  Yet these

8   introductions do not establish any "scheme" that is distinguishable from the alleged

9   concealment of Pocklington's identity.  Further, the SEC's attempt to hold

10  Defendant Pocklington responsible for these introductions by unidentified persons

11  fails because the SEC does not allege that Defendant Pocklington had anything but a

12  passive role in the introductions or had any duty to investors not to allow himself to

13  be introduced in this matter.  *See Abbate v. Wells Fargo Bank, N.A.*, No. 10-cv-

14  6561, 2011 WL 9698215, *2 (C.D. Cal. Nov. 17, 2011) (concluding that plaintiffs

15  failed to allege a deceptive act when they alleged only that the defendants "knew—

16  or were reckless in not knowing—that" statements made by a third party about the

17  company were false); *In re Coinstar Inc. Sec. Litig.*, No. 11-cv-0133, 2011 WL

18  4712206, at *11 (W.D. Wash. Oct. 6, 2011) (rejecting scheme liability when

19  plaintiff's only conduct allegation involved defendants' attendance at conferences

20  where false statements by other executives occurred).

21        As to the third category – Pocklington's and Eldred's alleged concealment of

22  Pocklington's role in Eye Machine, and their representation to Eye Machine's

23  outside counsel that Pocklington would act as an "advisor" to Eye Machine (Compl.

24  at ¶ 69) – again, this is no more than an "omission" claim dressed up as scheme

25  liability.  Likewise, the fourth and fifth categories of acts – Eldred's statements in

26  court and SEC documents (Compl. at ¶¶ 70-72) – constitute nothing more than the

27

28

same alleged misrepresentation and/or concealment of Pocklington's role.[1] As the Ninth Circuit has explained, however, "[o]missions are generally actionable under Rule 10b-5(b) ... [and] stem from the failure to disclose accurate information relating to the value of a security where one has a duty to disclose it[,]" and the act of omission or concealment is not actionable under scheme liability. *WPP Luxembourg*, 655 F.3d at 1057; *Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931, 940-41 (9th Cir. 2009) ("If such nondisclosure of a defendant's fraud was an actionable omission, then every manipulative conduct case would become an omissions case.  If that were so, then all of the Supreme Court's discussion of what constitutes manipulative activity would be redundant.").  To permit omissions to serve as a basis for scheme liability and vice versa would be redundant and would run afoul of *WPP Luxembourg* and *Desai*.

Finally, as to the alleged misappropriation, Defendants explained in their Motion to Dismiss and they discuss in greater detail below with respect to the SEC's Rule 10b-5(b) and Section 17(a)(2) claims, the SEC has failed to adequately plead any supposed misappropriation.  Moreover, the cases the SEC cites are distinguishable because the expenditures in those cases were not disclosed and/or were not, as here, equally consistent with normal, legitimate business transactions. For example, in *SEC v. Zandford*, 535 U.S. 813, 820 (2002) the defendant admitted that his misappropriation of funds from a client was "fraudulent," but disputed that it had the requisite connection to the purchase or sale of securities.   The Supreme Court found the requisite connection and found that the misappropriation could properly be viewed as a "course of business that operated as a fraud or deceit" on the defendant's customer.  *Id*. at 821.  In *SEC v. Aequitas Management LLC*, No. 16-cv-0438, 2017 WL 1206691 (D. Or. Jan. 9, 2017), the misappropriation occurred

---

[1] Moreover, the SEC's attempt to attribute these acts to all defendants against whom the SEC's scheme liability claim is brought is improper as the Complaint alleges that it was only Eldred who signed the documents.

in the context of a Ponzi scheme.  And in *SEC v. Wilde*, No. 11-cv-0315, 2012 WL 6621747 at \*5 (C.D. Cal. Dec. 17, 2012), the court specifically found that the product that defendants promoted—"prime bank instruments" or high-yield banking instruments—did not exist.

Because the SEC has failed to allege acts that are inherently deceptive separate and apart from its misrepresentation and omission claim, its scheme liability claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) claims fail and should be dismissed.

## II.     The SEC Has Failed to State a Claim Under Rule 10b-5(b) as a Matter of Law.

### A.     The SEC Has Failed to State a Claim Under Rule 10b-5(b) as to Allegedly Misleading Statements Regarding Offering Costs.

#### 1.     The SEC Has Failed to Plead Any Falsity Regarding Offering Costs.

The SEC's failure to address the lack of falsity of any of the statements regarding how investor funds would be used to pay for offering costs implicitly confirms that there are no actionable misrepresentations in the PPMs relating to payment of offering costs.  As discussed more fully in Defendants' Motion to Dismiss, the PPMs never stated that "only" approximately 28% of the gross offering proceeds would be used to pay for offering costs.[2]  To the contrary, the two

---

[2] The SEC claims it has not mischaracterized the statements in the PPMs relating to offering costs because it alleged that "[t]he PPMs claimed, *in substance*, that only approximately 28% of the gross offering proceeds were '*expected*' to be used to pay all of the offering costs for the offerings."  (Opp. at 13.)  This explanation cannot withstand scrutiny because the SEC has utilized this same mischaracterization elsewhere in the Complaint, but without the supposed caveat "in substance[.]" (*See* Compl. at ¶ 6 ["In addition to concealing Pocklington's role, Pocklington and Eldred made false and misleading statements to investors about how investor funds would be spent.  They claimed in private placement memoranda that *only* 28% of the money raised from investors was 'expected' to be used for 'offering costs'…"] (emphasis supplied).).

1   statements in the PPMs implicitly or explicitly referencing use of 28% of gross

2   proceeds to pay offering costs made clear that 28% was *not* the maximum that

3   would be spent.  While one statement said that "[t]he net proceeds from the offering

4   are expected to be approximately" an amount equal to 72% of the gross proceeds

5   raised, impliedly meaning that approximately 28% would be used to pay for offering

6   costs, the other statement said that "[a]n amount equal to 28% of the gross proceeds

7   of the offering has been set aside to pay estimated organization, offering and Unit

8   marketing compensation and costs."  (Ex. 1 at 2, 20.)

9        Indeed (and somewhat ironically) the only time that the word "only" is

10  actually used in relation to use of proceeds and estimated offering costs is when the

11  PPMs caution that "[t]he estimated use of proceeds is *only* an estimate by

12  management, and the actual use of proceeds may differ substantially."[3]  (Ex. 1 at 2

13  (emphasis supplied).)  Moreover, the PPMs specifically caution that offering costs

14  may actually exceed 50%.  (Ex. 1 at 15.)  Because investors were not told that

15  offering costs would "only" be 28%, but instead were clearly and specifically

16  informed that offering costs could exceed estimates and be as great as 50%—well

17  above the 28% estimated and set aside, and certainly above the 40.72% that the SEC

18  alleges the offering costs actually were—there is no falsity in any of the statements

19  in the PPMs as to how investor funds would be used to pay for offering costs.

20        2.   The Bespeaks Caution Doctrine Applies to SEC Enforcement
                Actions and Applies in This Case.

21        i.   *The Bespeaks Caution Doctrine Applies to SEC Enforcement*

22             *Actions.*

23        The SEC asks this Court to tread new ground and find that the "bespeaks

24  caution" doctrine does not apply to SEC enforcement actions.  The SEC contends

25  that the bespeaks caution doctrine does not apply to enforcement actions because the

26

27        [3] This cautionary statement follows the first statement implicitly referring to

28  the 28% figure.

doctrine is "premised on an investor's reasonable 'reliance' on the cautionary language and is designed 'to minimize the chance that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement.'" (Opp. at 14.) The SEC not only selectively presents the rationales behind the bespeaks caution doctrine, it neglects to inform this Court about the body of case law applying the doctrine in SEC enforcement actions.

To begin, the bespeaks caution doctrine is relevant not only to reliance, an element that only private plaintiffs must prove to maintain a Rule 10b-5 action, but also to materiality, an element both private plaintiffs and the SEC must prove to prevail on a securities fraud claim:

> But as we have recognized, the bespeaks caution doctrine is not new but a reformulation of two fundamental concepts in securities fraud law: reliance and materiality. To put it another way, the bespeaks caution doctrine reflects the unremarkable proposition that statements must be analyzed in context.

*Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (internal quotations omitted); *see also In re Worlds of Wonder Securities Litig*., 35 F.3d 1407, 1414 (9th Cir. 1994) ("the 'bespeaks caution' doctrine has developed to address situations in which optimistic projections are coupled with cautionary language—in particular, relevant specific facts or assumptions—affecting the reasonableness of reliance on and the materiality of those projections."). Indeed, in *Worlds of Wonder*, the Ninth Circuit noted in rejecting plaintiffs' argument that the doctrine only applies to Section 10(b) claims and not Section 11 claims that "the doctrine is *primarily* an application of the materiality concept, which applies equally to both statutory provisions." *Worlds of Wonder*, 35 F.3d at 1415 n.3 (emphasis supplied). Contrary to the SEC's contention that the bespeaks caution doctrine is inapplicable because it is irrelevant, the bespeaks caution doctrine is highly relevant to whether the alleged misrepresentations and/or omissions could have been material to a reasonable

1   investor.

2       Moreover, courts in this Circuit have applied the bespeaks caution doctrine in

3   SEC enforcement actions.  In *SEC v. Perry*, No. 11-cv-1309, 2012 WL 1959566, *7

4   (C.D. Cal. May 31, 2012), for example, the court found that the SEC's allegations

5   failed as a matter of law on a motion to dismiss because the bespeaks caution

6   doctrine applied.  The court found that because the forward-looking statements at

7   issue "were accompanied by specific warnings and cautionary language," they were

8   "immaterial" as a matter of law.  *Id*. at *7; *see also SEC v. ABS Manager, LLC*, No.

9   13-cv-0319, 2014 WL 2605476, *11 (S.D. Cal. June 11, 2014).[4]

10      Further, *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985), relied upon by the

11  SEC, is inapposite.  Contrary to the SEC's description of the case, in the Sixth

12  Circuit did not find the bespeaks caution doctrine inapplicable in a SEC enforcement

13  action.  Instead, the SEC rejected the defendant's argument that cautionary language

14  shielded him from liability because it found the cautionary language itself to be false

15  and misleading.  *Id.* ("Blavin also emphasizes that his newsletters included a

16  disclaimer that informed his readers that he could be trading in the stock about

17  which he wrote, and that he did not guarantee the accuracy of his stock investment

18  information. The district court found this disclaimer both 'false and

19  misleading[.]'…In this factual context, a disclaimer that the investment advisor

20  'may' trade in recommended securities for its own account is itself a material

21  misstatement… No genuine issue of material fact existed concerning the materiality

22  of misstatements and omissions contained in Providence newsletters.").

23      Thus, it is clear that the SEC's argument that the bespeaks caution doctrine

24

25  _____

        [4] It is also important to note that the Private Securities Litigation Reform Act
26  (the "PSLRA") contains a safe harbor provision that is similar to the bespeaks
    caution doctrine.  *In re New Century*, 588 F.Supp.2d 1206, 1226 (C.D. Cal. 2008)
27  ("The PSLRA's safe harbor provision…is the codified equivalent of the 'bespeaks
    caution' doctrine[.]").  The SEC's insistence that the bespeaks caution doctrine
28  applies only to private securities litigation would have the effect of rendering the
    safe harbor provision in the PSLRA essentially superfluous.

1    does not apply lacks merit, and the doctrine applies in full force to the Fourth and

2    Fifth Claims.

3    ii.    The Bespeaks Caution Doctrine Applies to the Alleged
     Misrepresentations Regarding Offering Costs in This Case.

4    Applying the bespeaks caution doctrine to this case, it is clear that the PPMs

5    bespoke sufficient caution to investors regarding offering costs such that any alleged

6    misrepresentations or omissions relating to the offering costs are not actionable.

7    As a threshold matter, the SEC does not challenge Defendants' contention

8    that the cautionary statements set forth in the PPMs were "conspicuous, specific,

9    and adequately disclosed."  *See Worlds of Wonder*, 35 F.3d at 1413; *see also Fecht*

10   *v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995) ("A motion to dismiss for failure to

11   state a claim will succeed only when the documents containing defendants'

12   challenged statements include 'enough cautionary language or risk disclosure.'").

13   As discussed at length in Defendants' Motion to Dismiss, the PPMs specifically and

14   adequately disclosed on no less than three occasions that offering costs could depart

15   "significantly" from the 28% of gross proceeds set aside for that purpose.  (Mot. at

16   18-21; Ex. 1 at 2 ("[t]he estimated use of proceeds is only an estimate by

17   management, and the actual use of proceeds may differ substantially."), at 15

18   ("[s]yndication costs incurred to outside consultants could range up to 50% of the

19   capital raised with their assistance."), at 15 ("our estimate of offering costs is an

20   estimate only, and actual offering costs may differ significantly from and be higher

21   than the amount we estimate.").  Tellingly, the SEC does not challenge the

22   sufficiency of the disclosures, tacitly conceding the issue.

23   Instead, the SEC challenges the application of the bespeaks caution doctrine

24   on the ground that the doctrine is *per se* unavailable when the defendant knows that

25   a particular statement is false.  (*See* Opp. at 15.)  That contention, however, is

26   contrary to Supreme Court precedent.

27   In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1087 (1991), the

28

-10-

Supreme Court considered whether executive officers' knowingly false statements of belief in a proxy solicitation were actionable as misrepresentations or omissions under § 14(a) of the 1934 Securities and Exchange Act.  Finding that they were actionable, the Supreme Court next considered whether a version of the bespeaks caution doctrine could immunize the knowingly false statements of belief from liability.  *Id*. at 1097.  The Supreme Court held that the doctrine could provide such immunity, stating:

> While a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil.  Since liability under § 14(a) must rest not only on deceptiveness but materiality as well (*i.e.*, it has to be significant enough to be important to a reasonable investor deciding how to vote), petitioners are on perfectly firm ground insofar as they argue that publishing accurate facts in a proxy statement can render a misleading proposition too unimportant to ground liability.

*Id*. (internal citation omitted); *see also Worlds of Wonder*, 35 F.3d at 1415 (same).  Thus, even if a defendant knows that his statement is false or misleading, an accompanying disclosure that negates the risk of deception to an investor can immunize him from liability.

Significantly, the Ninth Circuit relied on this very passage from *Virginia Bankshares* in adopting the bespeaks caution doctrine in the context of claims under Rule 10b-5.  *Worlds of Wonder*, 35 F.3d at 1415.  Moreover, if the rule were as the SEC contends, then it would have the effect of creating a *per se* rule of liability whenever a defendant knowingly made a misrepresentation or omission irrespective of whether other cautionary statements rendered the misrepresentation or omission immaterial to a reasonable investor.  As the Supreme Court, however, recognized, liability under Rule 10b-5 requires a showing not only of deceptiveness, but of materiality as well.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 238 (1988) ("in order to prevail on a Rule 10b-5 claim, a plaintiff must show that the statements were *misleading* as to a *material* fact.  It is not enough that a statement is false or

-11-

incomplete, if the misrepresented fact is otherwise insignificant." (original emphasis)); *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855-56 (9th Cir. 2001) (same).  Thus, any rule preventing the application of the bespeaks caution doctrine based on an allegation of knowledge, would run afoul of *Virginia Bankshares* and *Basic, Inc*.

Here, even assuming the truth of the SEC's allegations that defendants Pocklington and Eldred knew in advance that offering costs would exceed the 28 percent of gross proceeds that Eye Machine had set aside (a proposition Defendants do not concede, but assume only for purposes of this motion), the specific cautionary language contained in the PPM clearly bespoke caution to investors and rendered any alleged misrepresentation regarding use of offering costs immaterial as a matter of law.  Accordingly, the SEC's Rule 10b-5(b) claim based on alleged misrepresentations relating to offering costs fails as a matter of law and should be dismissed.

**B.      The SEC's Allegations Regarding Misappropriation Are Implausible and Its Rule 10b-5(b) Misrepresentation Claim Predicated on Such Misappropriation Should Be Dismissed.**

The SEC asks this Court to blindly take its word that Rule 10b-5(b) has been violated because "[c]ontrary to the representations made to investors in the PPMs, defendants Eye Machine, AMC Holdings, Pocklington, Eldred, and Walton misappropriated $681,587 of investor funds from Eye Machine's bank account, which were used to pay for the following undisclosed and unauthorized expenses[.]" (Compl. at ¶ 89.)  Because the facts alleged in the Complaint are insufficient to establish liability, this portion of its Rule 10b-5(b) claim must be dismissed.

It is well-settled that to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A complaint that "pleads facts that are 'merely consistent with'

a defendant's liability…'stops short of the line between possibility and plausibility of entitlement to relief[,]" and must be dismissed.  *Id*.  A plaintiff cannot survive a motion to dismiss by deliberately omitting unfavorable portions of documents on which their claims are based.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Indeed, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.  *Id*. (finding that the trial court did not err in considering a defendant's engagement letter on which the complaint explicitly relied on whose authenticity was not questioned).  Moreover, "[a] court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."[5]  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Here, the SEC flippantly dismisses and fails to address the issue that the Complaint fails to allege with any specificity what representations in the PPMs were false and misleading in light of the Company's expenditures.  (Opp. at 16.)  The Complaint alleges in Paragraph 89 that "Contrary to the representations made to investors in the PPMs, defendants Eye Machine, AMC Holdings, Pocklington, Eldred, and Walton misappropriated $681,587 of investor funds from Eye Machine's bank account, which were used to pay for the following undisclosed and unauthorized expenses[.]"  It is not clear from the Complaint whether "the representations made to investors" referred in Paragraph 89 refer to the statements summarized in Paragraph 88 regarding use of net proceeds of investor funds" or some other unidentified representations.  (*See* Mot. at 22.)  Based on the SEC's fundamental failure to inform Defendants of which representations form the basis of its Rule 10b-5(b) claim, Defendants seek dismissal, or at least clarification as to the

---

[5] This rule should be no different for documents that have been extensively relied upon in the Complaint, but which have not been attached.

1 basis of this charge.

2       Moreover, the facts that the SEC pleads with respect to expenditure of funds

3 are insufficient to establish liability.  At most, they are "merely consistent with"

4 liability, which is insufficient.  *Iqbal*, 556 U.S. at 678.  Indeed, the expenditures

5 identified in the Complaint are also consistent with legitimate expenses that Eye

6 Machine disclosed to its investors it would incur.  For example, the SEC points to

7 payments to Eva Pocklington and DTR Holdings.  However, as noted in the

8 Complaint, Eva Pocklington is the beneficial owner of AMC Holdings, as well as

9 DTR Holdings.  The PPMs state that the majority member, AMC Holdings, will

10 receive a "one-time management administration fee…equal to 7% of gross proceeds

11 of the offering" and that "[t]he Company is authorized to pay to the Majority

12 Member a consulting fee up to $25,000 per month for consulting services

13 rendered."  (Ex. 1 at 2, 20.)[6]  The SEC does not allege that the payments identified

14 to Eva Pocklington and DTR Holdings exceeded the amounts the PPMs disclosed

15 would be paid to the majority member.

16       Similarly, the Complaint baldly alleges that because funds were spent on

17 "Flowers" and "Retail Purchases (Including Clothing and Furniture)[,]" and to make

18 political and charitable donations, they were misappropriated.  The PPMs, however,

19 disclose that net proceeds from investor funds may be used for marketing and for

20 other purposes that the Manager deems in his business judgment to be in the best

21 interests of Eye Machine.  Nothing alleged in the Complaint establishes that such

22 expenditures were not used for those purposes.

23       The SEC complains that it should not be required to "prove its case in the

24 pleadings."  To the contrary, Defendants simply demonstrate to this Court that the

25 Complaint does nothing more than plead facts that are "merely consistent with"

26

27      [6] Other versions of the PPM changed the maximum amount, but not the fact

28 of, these monthly payments to AMC Holdings.

liability and therefore "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above a speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  Moreover, on a motion to dismiss, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (internal quotations omitted).  Here, the SEC has done nothing more than identify certain expenditures and label them "misappropriation," then in turn vaguely contend that such "misappropriation" constitutes some form of misrepresentation to investors.  Because such conclusory allegations are inadequate, the SEC's Rule 10b-5(b) claim relating to misappropriation is insufficient as pled and should be dismissed.

Moreover, as to materiality, the SEC fails to address that a reasonable investor could not find the allegations regarding use of net proceeds material when the PPMs  "bespoke caution" and "conspicuous[ly], specific[ally], and adequately disclosed" how such funds would be spent.  *See Worlds of Wonder*, 35 F.3d at 1413. Instead the SEC cites to a factually inapposite case—*SEC v. Research Automation Corp.*, 585 F.2d 31, 35-36 (2d Cir. 1978)—for the legally erroneous proposition that "the SEC is not required to specifically allege 'how' a reasonable investor could find the misappropriation of $681,587 to be material" because "misleading statements and omissions concerning the use of money raised from investors [are] material as a matter of law."  (Opp. at 18.)  *Research Automation* did not concern the bespeaks caution doctrine.  Indeed, that case did not involve any forward-looking statements at all, but instead concerned alleged misrepresentations and omissions concerning historical facts regarding purported sales, which were nonexistent, and the filing of a patent application, which had been rejected by the U.S. Patent Office, by the time the representation was made.  *Id.* at 33-35.  The court ruled that the alleged misrepresentations and omissions were material as a matter of

law because defendants failed on summary judgment to come forward with any evidence supporting their contention that a reasonable investor could not have relied on the alleged misrepresentations or omissions. *Id.* at 34-35. Were the rule as the SEC states in its Opposition, then it would write the materiality requirement out of any misrepresentation or omission claim and simply provide for liability anytime a statement was found to be factually inaccurate or incomplete. *See Basic*, 485 U.S. at 238 ("It is not enough that a statement is false or incomplete [under Rule 10b-5], if the misrepresented fact is otherwise insignificant.")

### C. The SEC Has Failed to Plead Actionable Misstatements and Omissions Regarding Pocklington's Alleged Role in Eye Machine.

In response to Defendants' argument that Defendants had no duty to disclose Defendant Pocklington's alleged role in the company, the SEC claims that a duty not to be misleading arose once Defendants began soliciting investors and speaking about Eye Machine's governance. (Opp. at 19.) Yet as set forth in the Motion to Dismiss, there was no falsity or incompleteness in any of the statements regarding Eye Machine's governance as Defendant Lantson Eldred was indeed the manager of Eye Machine, had the duties and discretion described in the PPMs, and exclusively managed and controlled Eye Machine "subject only to the right of members[,]" such as majority member, AMC Holdings as to which Defendant Pocklington's wife has a beneficial interest, "to vote on certain matters." (Compl. at ¶ 52.) Moreover, there was also no falsity or incompleteness in describing Defendant Pocklington as an "administrator and advisor" when he had no official role in the company.

Further, even if it could be said that the statements in the PPMs regarding the Eye Machine's governance were misleading, thus giving rise to a duty to disclose, it is well-established that there is no duty to disclose a known condition. *See Worlds of Wonder*, 35 F.3d at 1417; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 505 (9th Cir. 1992). The SEC's failure to allege that investors were not aware of

Pocklington's alleged role in the company, coupled with other allegations in the Complaint suggesting open knowledge of Pocklington's alleged role in the company gives rise to the inference that Defendants Pocklington, Eldred, and Eye Machine did not conceal Pocklington's role from investors, and therefore could not have misled investors.[7]

Finally, the SEC fails to address in any meaningful way Defendants' argument that the SEC has only conclusorily pled materiality of the allegedly omitted information regarding Pocklington's role in the company, instead merely protesting that the question of materiality should not be decided on a motion to dismiss.  The SEC's burden of adequately pleading facts that establish the elements of the claims it brings, including the element of materiality, is not lessened simply because the element in question may be generally be a question left for the trier of fact.

### III.     The SEC Has Failed to Plausibly Allege That Defendant Pocklington Was the "Maker" of Any of the Alleged Misrepresentations.

Defendants maintain that the Complaint has failed to adequately allege that Defendant Pocklington was the "maker" of the alleged misrepresentations and omissions in the PPMs that are subject to the SEC's Rule 10b-5(b) claim.  As set forth fully in Defendants' Motion to Dismiss, the Complaint fails to plead any

_____

The SEC contorts this argument into claiming that Defendants seek to impose a "reliance" requirement—a requirement reserved for private securities plaintiffs—on the SEC.  Defendants do no such thing.  Defendants merely point out, consistent with case law, that any omission of information that was otherwise known to investors was neither misleading nor material. [8] As discussed above and in the Motion to Dismiss (Mot. at 30), Defendants maintain that the expenditures identified by the SEC do not constitute "misappropriation" and indeed are consistent with legitimate expenditures disclosed to investors through the PPMs.  On this basis alone, the SEC's claim against Defendant Walton for negligently approving such expenditures fails to adequately allege a claim under Section 17(a)(3).  Moreover, even if the SEC had adequately pled facts establishing "misappropriation," the SEC's allegations against Defendant Walton fail to establish negligence on his part.

1   significant involvement in the preparation of the PPMs by Defendant Pocklington,

2   and fails to connect him with the alleged misrepresentations and omissions.

3          The SEC unsuccessfully attempts to distinguish case law holding that *Janus*

4   prohibits holding an officer of a company liable for the company's alleged

5   misrepresentations and omissions when that person was neither significantly

6   involved in the preparation of the documents containing the alleged

7   misrepresentations and omissions nor signed the document. Specifically, and

8   contrary to the SEC's description in its Opposition, the court in *SEC v. Mercury*

9   *Interactive, LLC*, No. 07-cv-2822, 2011 WL 5871020, *2 (N.D. Cal. Nov. 22, 2011)

10  did, in fact, hold on a motion for reconsideration of an earlier motion to dismiss that

11  the defendant—an officer of the company—did not "make" alleged misstatements in

12  annual and quarterly under *Janus* even though she was "significantly involved in

13  preparing" such statements because they were not signed by or otherwise

14  attributable to her, and she, therefore, could not be held liable under Rule 10b-5(b).

15  *Id*. ("Skaer points out that her last motion to dismiss was denied in part based on

16  allegations that she was significantly involved in preparing the company's annual

17  and quarterly reports…The Court agrees that allegations regarding Skaer's

18  involvement in preparing the annual and quarterly reports that were not signed by or

19  otherwise attributable to her are insufficient to state a Rule 10b-5(b) claim against

20  Skaer.")  The court only stated with respect to proxy documents, not the annual or

21  quarterly statements it had discussed earlier, that it "need not resolve whether

22  Skaer's signatures *on the proxy documents* would be sufficient, standing alone, to

23  state a viable misstatements claim under Rule 10b-5(b), because the SEC alleges

24  facts sufficient to state a viable scheme liability claim under Rule 10b-5(a) and (c)."

25  *Id*. (emphasis supplied).

26         At most, the Complaint alleges facts tending to show that Pocklington *could*

27  have exerted influence over the preparation of the PPMs.  The mere possibility of

28

1   such influence is inadequate to plead a misrepresentation claim against Defendant

2   Pocklington.  *See In re CytRx Corp. Sec. Litig.*, No. 14-cv-1956, 2015 WL 5031232,

3   at *6 (C.D. Cal. July 13, 2015) ("Courts since *Janus* have applied [*Janus*] to

4   disallow Rule 10b-5(b) claims against defendants who merely requested, influenced,

5   helped create, or supplied information for the relevant false or misleading

6   statements."); *see also Iqbal,* 556 U.S. at 678.

7        Thus, the SEC has failed to adequately plead that Defendant Pocklington

8   "made" the alleged misrepresentations and omissions contained in the PPMs.  For

9   this reason, in addition to the reasons discussed above, the SEC's Fourth Claim must

10   be dismissed as to Defendant Pocklington.

11   **IV.   The SEC Has Failed to Allege Adequate Facts to Establish that Walton
         Acted Negligently as a Certified Public Accountant and Therefore Its**

12   **Section 17(a)(3) Claim Must Be Dismissed.**

13        The SEC has failed to plead a viable claim against Defendant Terrence

14   Walton because it has failed to allege how Walton, as a certified public accountant,

15   fell below the standard of care for CPAs.[8]  While the SEC claims that Section

16   17(a)(3) claims are governed by a reasonable person standard, and that it need not

17   "allege more than simple negligence," the case that the SEC primarily relies on,

18   *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 454 (3d Cir. 1997) is factually

19   inapposite, and indeed actually supports Defendant Walton's argument.

20        *Hughes* involved a so-called "pump and dump scheme" whereby the owner of

21   the company along with others purchased stock in a company as part of an initial

22   _____

23        [8] As discussed above and in the Motion to Dismiss (Mot. at 30), Defendants

24   maintain that the expenditures identified by the SEC do not constitute

25   "misappropriation" and indeed are consistent with legitimate expenditures disclosed
     to investors through the PPMs.  On this basis alone, the SEC's claim against

26   Defendant Walton for negligently approving such expenditures fails to adequately

27   allege a claim under Section 17(a)(3).  Moreover, even if the SEC had adequately
     pled facts establishing "misappropriation," the SEC's allegations against Defendant

28   Walton fail to establish negligence on his part.

public offering, issued fake press releases designed to inflate the value of the company, and then sold their shares. *Id*. at 451-52. As to the bookkeeper, the Third Circuit found that the bookkeeper acted negligently pursuant to Section 17(a)(3) because the transactions at issue were "so clearly suspicious" that the bookkeeper acted negligently in continuing to complete the transactions despite his purported lack of knowledge as to the fraudulent nature of the transactions. *Id*. at 454. Indeed, among the fraudulent transactions were stock purchases by the minor child and housekeeper of one of the defendant owners and purchases by corporations that the bookkeeper knew lacked operating capital. *Id*. at 454-55. While it does not appear that the Third Circuit applied a specialized negligence standard, there was no allegation that the defendant bookkeeper possessed any specialized knowledge as there is with respect to Walton. Nor was any such allegation necessary, given the obviously fraudulent nature of the transactions.

More significantly, however, is what the SEC omits from this case. In the very same case, the Third Circuit considered whether the trial court properly granted summary judgment against a defendant, a businesswoman who was responsible for disseminating false information through press releases, and thereby pumping up the value of the stock, under Section 17(a)(2), which also employs a negligence standard. *Id*.; *see also Dain Rauscher, Inc.*, 254 F.3d at 856 (recognizing that Section 17(a)(2) and 17(a)(3) both require proof of negligence for liability). The businesswoman argued that she was not negligent because she trusted that the information she was receiving was accurate. *Hughes*, 124 F.3d at 454. In finding that the defendant businesswoman was negligent, the Third Circuit specifically considered whether a "reasonable businesswoman" would have relied on information provided by others without conducting an investigation into the truth of that information. *Id*. at 454-55. Analogously, here, the SEC must, but did not, plead facts showing that Walton failed to act as a "reasonable accountant."

Similarly, case law in the Ninth Circuit also indicates that to prevail on a Section 17(a)(3) claim, the SEC must plead facts demonstrating that an accountant's conduct fell below industry standards. *See SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir. 1979) (holding that accountants who acted in accordance with Generally Accepted Auditing Standards (GAAS) were not liable under Section 17(a), and that the industry standard, namely compliance with GAAS, was the relevant standard for measuring the accounts' conduct). Even outside of accounting, the Ninth Circuit has found that industry practice informs the applicable standard of care. *See Dain Rauscher, Inc.*, 254 F.3d at 856.

Here, the SEC pleads that Walton "acted negligently, and failed to exercise reasonable care in discharging his responsibilities to Eye Machine and its investors, particularly in light of his background as a CPA." (Compl. at ¶ 99.) The SEC, however, never specifies how Walton was negligent "in light of his background as a CPA." As discussed above, the expenditures at issue were not improper on their face; just as the mere fact of the expenditures could not establish misappropriation, they also could not establish any negligence by Defendant Walton in failing to identify them as such. Because the SEC has failed to allege how Walton was negligent "in light of his background as a CPA[,]" or that he was in fact negligent in any way, its claim under Section 17(a)(3) must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Pocklington, Walton, Vanetten, the Eye Machine, and AMC Holdings, and Relief Defendants respectfully ask this Court to dismiss the claims brought against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED:  August 27, 2018          JAMES & ASSOCIATES


By:     /s/ Becky S. James
        Becky S. James

        Attorneys for Defendants Peter H.
        Pocklington, Terrence J. Walton, Robert
        Vanetten, Nova Oculus Partners, LLC f/k/a
        The Eye Machine, LLC, and AMC
        Holdings LLC, and Relief Defendants Eva
        S. Pocklington, DTR Holdings, LLC,
        Cobra Chemical, LLC and Gold Star
        Resources, LLC

-22-